**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

In re:  JASON W. LITVINAS,                          Case No. 21-31912-KRH
               Debtor.                          Chapter 7

## <u>MEMORANDUM OPINION</u>

This matter comes before the United States Bankruptcy Court for the Eastern District of

Virginia (the "Court") upon the Chapter 7 Trustee's *Amended Objection to Claim No. 20* [ECF

No. 61] (the "Objection") filed by Peter J. Barrett (the "Trustee"), in his capacity as Chapter 7

Trustee for the bankruptcy estate of Jason W. Litvinas (the "Debtor") in the above-captioned

bankruptcy case (the "Bankruptcy Case").  The Trustee's Objection seeks to reclassify the secured

portion of Claim No. 20-2 (the "Proof of Claim") filed by the Internal Revenue Service (the "IRS")

from a secured claim in the amount of $77,925.26 to a general unsecured claim in the amount of

$81,827.90.  The Trustee does not object to priority portion of the claim asserted by the IRS in its

Proof of Claim in the amount of $12,968.92.

The United States, by counsel, filed a response [ECF No. 65] (the "Response") to the

Objection on behalf of the IRS asking the Court to overrule the Trustee's Objection.  The Trustee

filed a reply [ECF No. 69] (the "Reply") to the Response.  The Court conducted a hearing (the

"Hearing") on the Objection on July 13, 2022.  The Trustee and the United States, by their

respective counsel, participated at the Hearing.  The Court took the Objection under advisement at

the conclusion of the Hearing.[1]  After due consideration of the arguments of counsel at the Hearing,

the pleadings, and the authorities cited by the Parties in their memoranda of law, the Court will

---

[1]   At the conclusion of the Hearing, the Court permitted, but did not require, the United States to submit
supplemental briefing.  By its *Notice re: Sur-Reply* [ECF No. 71], the United States declined to file supplemental
briefing.  As such, this issue is now ripe for decision.

Case 21-31912-KRH    Doc 72    Filed 08/15/22    Entered 08/15/22 11:06:44    Desc Main
Document    Page 2 of 11

sustain the Objection.   This memorandum opinion sets forth the Court's findings of fact and

conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules ") as that Bankruptcy Rule is made applicable to this contested matter by

Bankruptcy Rule 9014.

This Court has subject-matter jurisdiction over the Bankruptcy Case pursuant to 28 U.S.C.

§§ 157 and 1334 and the General Order of Reference from the United States District Court for the

Eastern District of Virginia dated August 15, 1984.   This is a core proceeding under 28 U.S.C.

§ 157(b)(2)(A), (B).   Venue is appropriate pursuant to 28 U.S.C. § 1409.

The facts are not in dispute.   Between 2014 and 2016, the Debtor accumulated various

income tax obligations.   Reply ¶ 8, ECF No. 69 at 3; Claim No. 20-2 at 4.   The IRS assessed

interest and penalties on the unpaid taxes.   Claim No. 20-2 at 4.   In 2015, the Debtor and his mother

("Ms. Litvinas") acquired together real property (the "Real Property") located at 6219 Sweetbriar

Drive, Fredericksburg, Virginia 22407.   Reply ¶ 1, ECF No. 69 at 1.   In March 2019, the IRS

recorded a Notice of Federal Tax Lien (the "Notice of Federal Tax Lien") in the Clerk's Office for

the Circuit Court of Spotsylvania County against the Real Property in the amount of $63,792.55

(the "Tax Lien").   Reply ¶ 8 & Ex. A, ECF No. 69 at 3, 17; Resp. at 2, ECF No. 65 at 2.

On June 14, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under

Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").   The Trustee was

appointed as the interim Chapter 7 Trustee and became the Trustee in this Bankruptcy Case

pursuant to section 702(d) of the Bankruptcy Code.   On September 27, 2021, the Debtor received

his discharge.   *See* Discharge of Debtor, ECF No. 29.

On October 7, 2021, the Trustee requested that the Clerk's Office of the Court issue a notice

to all creditors and parties in interest in this Bankruptcy Case that there may be assets available for

distribution and requiring proofs of claim be filed in the Bankruptcy Case. *See* ECF No. 30.

Accordingly, on October 8, 2021, the Clerk issued a *Notice of Need to File Proof of Claim Due to*

*Recovery of Assets* (the "Asset Notice") [ECF No. 31, 32]. The Asset Notice established January

10, 2022, as the deadline for all creditors, including the United States, to file their proofs of claim

(the "Claims Bar Date"). Asset Notice at 1, ECF No. 32 at 1.

On December 22, 2021, the Trustee filed *Trustee's Motion (I) for Authority to Sell Property*

*of the Estate and to Pay Realtor's Commission and Expenses at Closing; and (II) to Approve*

*Compromise Pursuant to Rule 9019* (the "Motion to Sell") [ECF No. 46].[2] The Motion to Sell

sought approval of an agreement between the Trustee and Ms. Litvinas pursuant to Bankruptcy

Rule 9019 whereby, in exchange for the Trustee's agreement not to administer the Debtor's

personal property, Ms. Litvinas agreed to forfeit any right she had in the Real Property. Mot. to

Sell ¶ 9, ECF No. 46 at 3. The Trustee further sought Court approval to sell the Real Property

pursuant to section 363 of the Bankruptcy Code for $450,000.00, with all liens and interest in the

Real Property, if any, attaching to the net sale proceeds. *Id.* ¶¶ 12, 13, ECF No. 46 at 3-4. In the

Motion to Sell, the Trustee noted his belief that the Property was encumbered by "a first lien

mortgage in favor of Freedom Mortgage in the approximate amount of $236,839.14 [and] a lien in

favor of the IRS in the approximate amount of $63,792.55." *Id.* ¶ 10, ECF No. 46 at 3. After

conducting a hearing thereon, the Court granted the Motion to Sell.[3] Order Granting Trustee's

Mot. (I) for Authority to Sell Property of the Estate & to Pay Realtor's Commission & Expenses

at Closing; & (II) to Approve Compromise Pursuant to Rule 9019, ECF No. 52.

---

[2]   The Trustee received Court approval to engage a realtor to sell the Real Property. *See* Order Granting Appl. to
Employ RealMarkets, a Century 21 New Millennium Team as Realtor for the Trustee, ECF No. 36.

[3]   Freedom Mortgage, the holder of the first deed of trust, filed a response to the Motion to Sell, indicating that they
did not object to the proposed sale, subject to certain payoff conditions. *See* Resp. to Mot. for Authority to Sell
Real Property, ECF No. 48. The IRS did not respond to the Motion to Sell.

Prior to closing the sale, the Trustee, through his Court-approved realtor, contacted the IRS, requesting the payoff amount for the Tax Lien. Reply ¶ 9, ECF No. 69 at 3. The IRS replied that the "lien was released by the IRS on 10/25/2021" and included a copy of the release.[4] Reply ¶ 9 Ex. B, ECF No. 69 at 3, 19-20. On February 4, 2022, the Trustee filed *Trustee's Report of Sale* [ECF No. 54], reporting, *inter alia*, that the sale had closed on January 26, 2022, and that "Liens and Credits Paid on Sale [were] $243,387.71," resulting in net proceeds to the Debtor's bankruptcy estate in the amount of $154,215.30.

On January 25, 2022, fifteen days after the Claims Bar Date had passed, the IRS untimely filed its Proof of Claim in the Bankruptcy Case. The Proof of Claim was later amended to add additional interest to the IRS's asserted unsecured general claim. *See* Claim Nos. 20-1, 20-2. The Proof of Claim was filed in the aggregate amount of $94,796.82, of which the IRS claimed $77,925.26 was secured by a federal tax lien. Claim No. 20-2. The Trustee's Objection to the Proof of Claim requested that the secured portion of the claim be reclassified as unsecured "because the lien purportedly securing this claim was released." Obj. at 1, ECF No. 61 at 1.

The United States conceded "the Trustee correctly notes that upon receiving notice of the debtor's discharge (September 27, 2021), Dkt No. 29, the IRS released the Notices of Federal Tax Liens" and that the "IRS released the liens in question."[5] Resp. at 2, 3, ECF No. 65 at 2, 3. The

---

[4]   Although not argued by the parties, due to its conduct in this Bankruptcy Case, the doctrine of waiver and judicial estoppel may apply to prevent the United States from asserting that the Tax Lien encumbers the Real Property or proceeds thereof. However, the Court need not reach that alternative holding.

[5]   At the Hearing, the United States stated that it was the IRS's policy to release tax liens upon the issuance of an individual's Chapter 7 discharge. The Court is perplexed by such a position, which stands at odds with basic tenets of the Bankruptcy Code. Namely, the issuance of a Chapter 7 discharge would merely discharge the debtor's personal liability for a debt. Without more – such as a creditor's affirmative release of a lien – the discharge would not affect in rem liability for a debt. Moreover, as evidenced by this Bankruptcy Case, the discharge is separate and apart from administration of assets of a bankruptcy estate. If this policy was widely implemented, as suggested at the Hearing, many chapter 7 cases previously determined to be no asset cases may, in fact, have unencumbered assets available for distribution.

United States further acknowledged that "[t]he release has not been revoked, and the original liens have not been reinstated." *Id*. at 4, ECF No. 65 at 4.

While the United States and the Trustee agree on the foregoing facts, they disagree concerning the implications of the IRS's post-Petition Date release of the Tax Lien. The United States asserts that the release of a lien after the commencement of judicial proceedings, like the Bankruptcy Case, has no effect on the validity or priority of the Tax Lien. *Id*. at 3, ECF No. 65 at 3. In support of this position, the United States relies on section 6323(g) of the Federal Tax Regulations, which states, in relevant part, "the release of the lien . . . shall [not] alter or impair any right of the United States to property or its proceeds that is the subject of a levy or judicial proceeding commenced prior to . . . the release of the lien." 26 C.F.R. § 301.6323(g)-1(a)(3)(i) (alteration added). The United States argues that the release of the Tax Lien does not alter the IRS's claim secured by the Debtor's estate, as the Bankruptcy Case was commenced prior to the release of the Tax Lien.

The United States fails to comprehend the context of section 6323. The section, titled "Refiling of Notice of Tax Lien," concerns the process by which the IRS can re-assert a tax lien after the lien has lapsed, that is, after expiration of the ten-year statutory period. "In order to continue the effect of the notice of lien, the notice must be refiled during the required refiling period," *id.* § 301.6323(g)-1(a)(1), which is defined as "the 1-year period ending 30 days after the expiration of 10 years after the date of the assessment of the tax," *Id.* § 301.6323(g)-1(c)(1)(i). If the "Internal Revenue Service fails to refile a notice of lien . . . the notice is not effective, after the expiration of the required refiling period." *Id.* § 301.6323(g)-1(a)(3).

The Federal Tax Regulations provide that for a notice of lien that contains an automatic certificate of release at the end of the ten-year statutory period, if the IRS fails to refile a notice of

5

lien before expiration of the required refiling period, the lien will be automatically released.  *See id.*  However, if there is a pending levy or judicial proceeding concerning property subject to the lien, it is that automatic release which would not be effective.  *See id.* § 301.6323(g)-1(a)(4) ("If a notice of lien is not refiled, and the notice of lien contains a certificate of release that automatically releases the lien when the required refiling period ends, the lien is released as of that date and is no longer in existence.").

Accordingly, section 6323 may apply if the required refiling period had expired or if the required refiling period had expired and the notice of lien contained a certificate of release that automatically released the lien when the required refiling period ended.[6]  In the instant case, the Notice of Federal Tax Lien provides the last day for refiling the notice of lien for each assessment: for the tax period ending December 31, 2014, the last day for refiling is December 23, 2025;and for the tax periods ending December 31, 2015, and December 31, 2016, the last day for refiling is December 5, 2028.  Reply Ex. A, ECF No. 69 at 17.  The required refiling period for each assessment is years away.  In the absence of an expiring refiling period, Federal Tax Regulation 6323 does not apply in this matter.

The Tax Lien in the case at bar was not released because the lien expired at the conclusion of the refiling period. The release in this Bankruptcy Case arose from an affirmative act.  As such, the Court finds that section 6325 of the Federal Tax Regulations governing the non-automatic release of tax liens is the legal standard that applies to this case.  *See* 26 C.F.R. § 301.6325-1.  Under this section, the IRS issues a certificate of releases, as happened here.  *Id.* § 301.6325-

---

[6]   The United States cites to *Hutchinson v. United States* (*In re Hutchinson*), Case No. 17-12272-A-7, 2022 WL 1021843, 2022 Bankr. LEXIS 988 (Bankr. E.D. Cal. Apr. 1, 2022) in support of its position.  However, that case concerned a certificate of release arising from a notice of lien that automatically extinguished the lien upon the expiration of the refiling period – not a voluntary release.  Moreover, *In re Hutchinson* did not address whether a pending bankruptcy case qualifies as a "judicial proceeding" or whether a "judicial proceeding" is limited to mean a collection action filed in accordance with 26 U.S.C. § 6502.

6

1(a)(1). A "certificate [of release] shall be conclusive that the tax lien referred to in such certificate

is extinguished." *Id.* § 301.6325-1(f)(1)(i).

While section 6323 limits the effect of a release during a pending judicial proceeding,

section 6325 does not. *Compare id.* § 301.6323(g)-1(a)(3)(i), *with id.* § 301.6325-1. If, as in this

case, a tax lien has been erroneously released, section 6325 makes provision for its reinstatement

regardless of the pendency of judicial proceedings. In such an instance where the certificate of

release was "issued erroneously or improvidently," the IRS "may revoke the certificate and

reinstate the tax lien." *Id.* § 301.6325-1(f)(2)(a). The reinstated tax lien "is effective on and after

the date the notice of revocation is mailed to the taxpayer;" it is not retroactive. *Id.* § 301.6325-

1(f)(2)(iii). In the instant case, the IRS has not revoked the certificate of release and it has not

reinstated the Tax Lien.[7] Resp. at 4; ECF No. 65 at 4. Any attempted revocation and reinstatement

at this point would not be retroactive to the date of closing.

The Court finds the case of *In re Green* to be instructive. 310 B.R. 772 (Bankr. M.D. Fla.

2004). There, the bankruptcy court also considered "whether a pre-petition tax lien should be

treated as a secured claim or as an unsecured claim where the IRS released the lien relating to the

claim post-petition." *Id.* at 774. In that case, prior to the debtors' bankruptcy filing, the IRS had

recorded a tax lien against the debtors' property for unpaid taxes. *Id.* at 774. After the debtors

received their Chapter 7 discharge, the IRS voluntarily released the tax lien. *Id.* The debtors then

converted their case to Chapter 13 and the IRS filed a proof of claim, asserting a secured claim

based on the released tax lien. *Id.* at 774-75. The debtors objected to the IRS's proof of claim on

the same grounds upon which the Trustee has objected here. *Id.*

---

[7]     As this is not pending before the Court, the Court does not opine on whether any attempt by the IRS to reinstate
the Tax Lien would violate the discharge injunction. *See* 26 C.F.R. § 301.7433-2(a) (creating a civil cause of
action for a willful violation of sections 362 and 524 of the Bankruptcy Code).

The *Green* court found that section 6325 "is relevant and governs the release of tax liens by the IRS." *Id.* at 776 (emphasis removed). Applying section 6325, the court explained:

> Despite the reality that the IRS was not required to release its tax lien, here, the IRS affirmatively and voluntarily extinguished its lien against the debtors' home when it recorded the Release. By effecting this post-petition release of lien, the IRS "relinquished its preferred status as the holder of a [secured] tax lien." Title 26 of the Internal Revenue Code, Section 6325(f)(1)(A), specifically provides that if a certificate of release is issued by the Secretary and filed in the same office as the notice of lien to which it relates, the certificate "*shall be conclusive that the lien referred to in such certificate is extinguished.*" Accordingly, under the plain and unequivocal language of the statute, the certificate of release issued and recorded by the IRS is "conclusive proof" that the IRS's tax lien is extinguished. Accordingly, the IRS is not entitled to assert Claim 7 as a secured claim because it extinguished its tax lien underlying this claim.

*Id.* at 776–77 (first quoting *In re Miller*, 98 B.R. 110, 112 (Bankr. N.D. Ga. 1989); then quoting 26 C.F.R. § 6325-1(f)(1)(A); then quoting *United States v. Winchell*, 793 F. Supp. 994, 996 (D. Colo. 1992)) (emphasis in original).

Much like *In re Green*, in the instant case, the IRS affirmatively and voluntarily ordered the release of the Tax Lien; the release did not spring automatically from the expiration of the required refiling period. Accordingly, the Court finds that section 6325 – and not section 6323 – is the appropriate statute under which to interpret the release.[8] The Court finds that the release of the Tax Lien was effective on October 25, 2021. *See* Reply Ex. B, ECF No. 69 at 19-20. As the IRS has confirmed that it has not revoked the release nor reinstated the Tax Lien, *see* Resp. at 4, ECF No. 65 at 4, the Court further finds that no tax lien existed on January 26, 2022 (the date of the closing of the sale of the Real Property) and no lien attached to the proceeds of the sale.

---

[8]   A basic principle of statutory construction is that specific language will govern more general language. *See Hainan Airlines Co. v. Braun* (*In re Dornier Aviation (N. Am.), Inc.*), No. 02-82003-SSM, 2005 WL 3783829, at *6, 2005 Bankr. LEXIS 2818, at *22 (Bankr. E.D. Va. Dec. 30, 2005).

Regardless of whether section 6323 or 6325 applies, the United States contends, in the alternative, that because the IRS had a properly perfected secured tax lien on the Petition Date, the IRS is entitled to a secured claim throughout the pendency of the Bankruptcy Case, regardless of its actions.   While the United States is correct that the "snapshot theory" generally applies to determine secured status, the snapshot theory does not resurrect the voluntarily released Tax Lien. The snapshot theory, or "'freeze rule,' dictates that security interests are determined as of the petition date." *Firstrust Bank v. Indus. Bank* (*In re Essex Constr., LLC*), 591 B.R. 630, 635 (Bankr. D. Md. 2018).   To that end, the United States quotes the Fourth Circuit's unpublished decision for the proposition that "valid liens existing at the time of commencement of a bankruptcy proceeding are preserved." *In re Fletcher Woods, Inc.*, 887 F.2d 1079 (4th Cir. 1989) (per curiam) (quoting *Isaacs v. Hobbs Tie & Timber Co.*, 282 U.S. 734, 738 (1931)).   However, the Court goes on to explain "that liens good at this time do not lose their validity as against the trustee; *unless the statute so expressly provides*." *Id.* (quoting against *Lockhart v. Garden City Bank & Tr. Co.*, 116 F.2d 658, 661 (2d Cir. 1940)) (emphasis added).   Here, the statute does so expressly provide – the IRS can file a certificate of release which will be deemed to extinguish the lien. *See* 26 C.F.R. § 301-6325-1.

The United States also relies on the opinion of Judge Mayer of this Court citing the proposition that "lien priorities are determined as of the filing of the petition in bankruptcy and are not altered during the pendency of the case." *Highland Constr. Mgmt. Servs., LP v. Wells Fargo* (*In re Highland Constr. Mgmt. Servs., LP*), 497 B.R. 829, 840 (Bankr. E.D. Va. 2013), *aff'd* 583 F. App'x 217 (4th Cir. 2014) (emphasis added).   The United States ignores, however, Judge Mayer's  explanation that "[t]he rule that the filing of a petition in bankruptcy does not of itself alter or modify a pre-petition lien and, *unless modified during the bankruptcy*, passes through

bankruptcy unaffected by the filing is well established." *Id.* (emphasis added).[9]  Again, the IRS

modified its lien during the bankruptcy case by voluntarily filing a certificate of release.

Contrary to the United States' argument, bankruptcy courts have refused to apply the

snapshot theory to determine the secured status of an IRS claim where the IRS has filed a

post-petition certificate of release.  *See, e.g.*, *In re Norris*, Case No. 07-00345-KDB, 2007 WL

3348376, at *5, 2007 U.S. Dist. LEXIS 79985, at *15-16, (S.D. Ala. Sept. 12, 2007); *In re Green*,

310 B.R. at 776.  "[W]hile it is true that valid liens typically pass through a bankruptcy unaffected,

nothing prevents lien holders from voluntarily relinquishing their liens."  *In re Tires N Tracks,*

*Inc.*, 498 B.R. 201, 206 (Bankr. N.D. Ill. 2013).  The Bankruptcy Code does not prohibit secured

creditors from changing their secured status by releasing their liens.[10]  *See id.* at 207 (citing *In re*

*Metaldyne Corp.*, 409 B.R. 671, 679 n.11 (Bankr. S.D.N.Y.), *aff'd*, 421 B.R. 620 (S.D.N.Y. 2009);

*In re Norris*, 2007 WL 3348376, at *5, 2007 U.S. Dist. LEXIS 79985, at *16; *In re Green*, 310

B.R. at 776).

The Court finds that the snapshot theory does not apply to the voluntary relinquishment of

a secured claim.  When the IRS voluntarily filed its release of the Notice of Federal Tax Liens on

October 25, 2021, with the Clerk's Office for the Circuit Court of Spotsylvania County, the release

became conclusive proof that the Tax Lien had been extinguished.  26 C.F.R. § 6325-1(f)(1)(A).

The IRS voluntarily changed its status from secured creditor to unsecured creditor.  *See In re*

---

[9]  *Highland Construction* is also factually distinguishable as it concerned the use of a debtor's strong arm avoidance powers under section 544 of the Bankruptcy Code to attempt to avoid a security interest where the financing statement had lapsed post-petition, 497 B.R. at 831-32, not the voluntary relinquishment of secured status.  *In re Fletcher Woods* is equally inapposite.  The case involved the mistaken cancellation of a deed of trust under North Carolina state law.  887 F.2d at 2.  The IRS was not a party in the case and the case did not involve tax liens.

[10]  As described herein *supra*, the Real Property was encumbered by a consensual first deed of trust, which was paid in full through the Court-approved sale.  If the United States were correct that the snapshot rule applied regardless of post-petition action, the lender on the first deed of trust would still be entitled to a secured claim despite payment in full.  As a practical matter, that cannot be the case.

*Green*, 310 B.R. at 774, 779 ("The IRS elected a course of action and must abide by the consequences."). The IRS no longer has a secured claim as to the Real Property, property of the Debtor, or property of the Debtor's bankruptcy estate.[11]

The Trustee does not contest that the IRS is entitled to a priority unsecured claim in the amount of $12,968.92, nor does the Trustee contest aggregate amount of the Proof of Claim. In light of the foregoing, the Court finds that the IRS is entitled to a priority unsecured claim in the amount of $12,968.92 and a general unsecured claim of $81,827.90. Because the IRS filed its Proof of Claim after the Claims Bar Date, the Trustee shall make pro rata distributions, if any, on account of the IRS's general unsecured claim in accordance with section 726(a)(3) of the Bankruptcy Code.[12]

## CONCLUSION

For the reasons stated herein, the Court sustains the Trustee's Objection to Claim No. 20. A separate Order shall issue.

DATED:   August 15, 2022          /s/ Kevin R. Huennekens
                                UNITED STATES BANKRUPTCY JUDGE

                                Entered on Docket:  August 15, 2022

---

[11]  The Real Property was sold free and clear of interests and liens, with all liens in the Real Property attaching to the proceeds. *See* Order Granting Trustee's Mot. (I) for Authority to Sell Property of the Estate & to Pay Realtor's Commission & Expenses at Closing; & (II) to Approve Compromise Pursuant to Rule 9019 ¶ 3, ECF No. 52 at 4. Because the Tax Lien had been released prior to the sale, the Tax Lien did not attach to either the Real Property or to the proceeds thereof. For the avoidance of doubt, the proceeds of the Real Property are unencumbered by any purported secured claim of the IRS.

[12]  Given that the United States readily concedes that the IRS had actual knowledge of the Bankruptcy Case as it released the Tax Lien based on the Debtor's discharge, section 726(a)(2)(C) of the Bankruptcy Code is inapplicable.